Electronically Filed 10/10/2013 11:44:35 AM ET

IN THE CIRCUIT COURT OF THE
NINTH JUDICIAL CIRCUIT IN AND FOR
ORANGE COUNTY, FLORIDA

ROY KRONK,                                    CASE NO.: 2012-CA-003335-O

        Plaintiff,

v.

CLARITY DIGITAL GROUP, LLC,
d/b/a EXAMINER.COM; EXAMINER.COM[1]; and
CINDY ADAMS

        Defendants.

_____/

## AMENDED COMPLAINT

COMES NOW, Plaintiff, ROY KRONK (hereinafter referred to as "Kronk" or "Plaintiff"),

by and through his undersigned counsel, and hereby files his Complaint and Demand for Jury Trial

against Defendant, CINDY ADAMS (hereinafter referred to as "Adams" or "Defendant"), and in

support thereof, state as follows:

## VENUE AND JURISDICTION ALLEGATIONS

1.      This is an action for damages in excess of $15,000.00, excluding attorneys' fees and

costs.

2.      Venue is proper in Orange County, Florida, pursuant to Chapter 47, Florida Statutes,

because the claims concern and relate to events that occurred in Orange County, Florida, and such

the cause of action accrued in Orange County, Florida.

---

[1] All claims against Clarity Digital Group, LLC d/b/a Examiner.Com, have been resolved and
they are not a party of this action.

1

267931 v2

3.     Kronk, at all material times, was employed and working in Orange County, Florida as a meter reader for Orange County. At all relevant times, Plaintiff Kronk was acting as a good samaritan, by doing the right thing and reporting what he found to the proper authorities. What Plaintiff Kronk found turned out to be the remains of Caylee Anthony. Plaintiff asserts that under the facts herein he is a private figure.

4.     Defendant, Adams has engaged and continues to engage in substantial activity within the State of Florida, and has committed defamation in the State of Florida and this Court has long arm jurisdiction over Defendant pursuant to Chapter 48, Florida Statutes.

5.     Defendant, Adams is subject to the jurisdiction of this Court as she has operated, conducted and engaged in business in Orange County, Florida. F.S. 48.193(b) and (f).

6.     Defendant, Cindy Adams is a nonresident subject to the Court's jurisdiction who cannot be located despite due diligence or the Defendant, Cindy Adams is actively concealing her whereabouts. (See *Thompson v. Mosby Legal Grp., LLC,* 3:12-CV-692-J-99TJC, 2013 WL 2191511 [M.D. Fla. May 21, 2013).

## GENERAL ALLEGATIONS

7.     All conditions precedent to filing this action have occurred, accrued or have been waived as a matter of law, including the service of a §770.01, Florida Statutes, notice. A true and correct copy of the §770 statutory notice is attached hereto as Exhibit "A".

8.     On or about March 1, 2010, an article appeared on Examiner.com and was written and published by Defendant. The article is attributed to Defendant, Cindy Adams as the author. The article contained numerous statements which are false and defamatory about Roy Kronk, including:

2

267931 v2

a) Accused murder, Casey Anthony, helped a former meter reader find her daughter's body in Dec. 2008.

b) That Roy Kronk, who found the lifeless body of 2-year-old Caylee Anthony in a wooded area near the Anthony family home, discovered the girl's body due to information obtained straight from Casey.

c) An employee of the Orange County Jail - where Casey sits behind bars charged with the first-degree murder of Caylee - heard her talking about where the toddler's body was placed.

d) Casey said she was able to drive her car into the wooded area about a half-mile from her Florida home near a school… Then she said, "When I got out of the car, I tripped over these bricks.' She said she buried Caylee's body nearby, and it was about 80 feet from the road.

e) That Kronk was determined to find the little girl's body and said in Nov. 2008, "I know where Caylee is, and I'm going to go get her."

f) The only reason Roy Kronk found Caylee is that the body's location had come to him in a roundabout way from Casey Anthony herself.

9. The statements in the article are false and defamatory statements.

10. At the time of the publication of this article, the Defendant knew or should have known that the statements contained in the article were false and defamatory.

11. Although the comments appear to be attributed to a "source", there could be no credible or good faith source that would entitle the Defendant to use these statements.

12. The publication of the statements, which are in and of themselves per se liable, leave a false and misleading impression of Plaintiff, Roy Kronk, and how he discovered the remains of Caylee Anthony.

13. The statements further leave the impression that Plaintiff, Roy Kronk, perjured himself; lied about how he found the body and that he was involved in a conspiracy.

14. Kronk, as a good Samaritan and private citizen, reported what he found to the proper authorities which led to the discovery of Caylee Anthony's body, and this information was widely

3

267931 v2

known by the public through multiple national media outlets and readily available to the public on or before March 1, 2010 (prior to the publication of the articles at issue in this Complaint).

15. The Defendant had an obligation to verify and confirm the information which she knew or should have known was unreliable and false.

16. Kronk has never indicated that he had any information concerning the body prior to his visits to the woods.

17. Kronk has never indicated he knew Casey Anthony, Caylee Anthony, or any family member or friend of the Anthony family at the time when he found the body.

18. Kronk's description of how he found the body are public record and have been covered by national, local and internet news media.

19. Prior to the article at issue herein, Kronk has made sworn statements to the Orange County Sheriff's Office in which he described how he found the location of what turned out to be Caylee Anthony's body, and this information was widely known by the public through multiple national media outlets and readily available to the public on or before March 10, 2010 (prior to the publication of the article at issue in this Complaint).

20. Prior to the article at issue herein, Kronk made sworn statements in which he denied having any information about the location of what turned out to be Caylee Anthony's body prior to the day went into the woods in August 2008, and this information was widely known by the public through multiple national media outlets and readily available to the public on or before March 10, 2010 (prior to the publication of the article at issue in this Complaint).

21. Prior to the article at issue herein, the Orange County Sheriff's Office publically announced that Kronk was not a suspect in the disappearance or murder of Caylee Anthony, and this information was widely known by the public through multiple national media outlets and readily

4

available to the public on or before March 10, 2010 (prior to the publication of the article at issue in this Complaint).

22.    Prior to the article at issue herein, Kronk made sworn statements that he had no connection to Casey Anthony or her family and was not in any way connected to the Anthony family or ever received information either directly or indirectly from Casey Anthony realting to the remains of Caylee Anthony.

23.    The Orange County Sheriff's Office publically announced that Kronk had no ties to the Anthony family, and this information was widely known by the public through multiple national media outlets and readily available to the public on or before March 10, 2010 (prior to the publication of the article at issue in this Complaint).

24.    Kronk has never been found by any court or other tribunal to be responsible for Caylee Anthony's death.

25.    Kronk has never been found by any court or other tribunal to be in violation of criminal law amounting to a felony.

26.    It is a matter of public record that Kronk has never been found by any court or other tribunal to be responsible for Caylee Anthony's death, or in any way involved with the incident except for finding the remains of Caylee Anthony.

27.    It is a matter of public record that Kronk has never been found by any court or other tribunal to be in violation of criminal law amounting to a felony.

### COUNT I - DEFAMATION (ON ITS FACE)

COMES NOW, Plaintiff, ROY KRONK (hereinafter referred to as "Kronk" or "Plaintiff"), by and through his undersigned counsel, and hereby sues Defendant, CINDY ADAMS, and states as follows:

5

267931 v2

28.     Plaintiff hereby realleges and incorporates Paragraphs 1 through 27 above, as if fully set forth herein.

29.     This is an action for damages for defamation (on its face).  Plaintiff's damages are One Million Dollars.

30.     All conditions precedent to filing this action have occurred, accrued or have been waived as a matter of law.

31.     Cindy Adams' false statements in the March 10, 2010 article are defamatory *per se* because they impute that Kronk is guilty of the commission of serious crimes. Notably, the clearly false and defamatory statements that Kronk:

a)     Accused murder, Casey Anthony, helped a former meter reader find her daughter's body in Dec. 2008.

b)     That Roy Kronk, who found the lifeless body of 2-year-old Caylee Anthony in a wooded area near the Anthony family home, discovered the girl's body due to information obtained straight from Casey.

c)     An employee of the Orange County Jail - where Casey sits behind bars charged with the first-degree murder of Caylee - heard her talking about where the toddler's body was placed.

d)     Casey said she was able to drive her car into the wooded area about a half-mile from her Florida home near a school… Then she said, "When I got out of the car, I tripped over these bricks.'  She said she buried Caylee's body nearby, and it was about 80 feet from the road.

e)     That Kronk was determined to find the little girl's body and said in Nov. 2008, "I know where Caylee is, and I'm going to go get her."

f)     The only reason Roy Kronk found Caylee is that the body's location had come to him in a roundabout way from Casey Anthony herself.

32.     The above referenced statements made and published by Defendant on or about March 1, 2010, were false and defamatory statements concerning the Plaintiff.

33.     Each of these statements in the body of the article are false, inaccurate or misleading.

6

34.     Each of these statements in the body of the article are defamatory *per se* as imputing amoral behavior, criminal activities, criminal character and criminal propensities to Kronk.

35.     Defendant made and published these false and defamatory statements against Plaintiff without reasonable care as to the truth or falsity of the statements.  Defendant made and published false and defamatory statements with reckless disregard for the rights of the Plaintiff.

36.     Although Defendant knew or should have known that the statements were defamatory on their face, Defendant proceeded to publish the false and defamatory statements with malice and without regard to Plaintiff.

37.     The actions taken by Defendant constituted unprivileged publications to third parties of the above described false and defamatory statements about Plaintiff.

38.     The actions of Defendant amounted to, at minimum, negligence or gross negligence and were done with malice in an attempt to injure Plaintiff's reputation.  The above statements were made with the intent to expose Plaintiff to hatred, ridicule or contempt or charged Plaintiff with committing a crime and tended to injure Plaintiff in his business, reputation or occupation.

39.     The actions of Defendant were the direct and proximate result of the damages suffered by Plaintiff as Plaintiff has suffered loss of reputation, embarrassment humiliation, outrage and has otherwise been directly damaged by Defendant's unprivileged actions.

40.     In excess of the specific damages suffered by Plaintiff, Plaintiff is entitled to special damages due to the special harm caused by the unprivileged publications.

41.     Defendant made and published these false and defamatory statements without reasonable care to determine the falsity of the statements.

WHEREFORE, Plaintiff, ROY KRONK, demands that this Court render judgment against Defendant, CINDY ADAMS, and award all damages, including interest, costs and any and such

7

267931 v2

other and further relief as this Court deems just and proper under the circumstances. Plaintiff, ROY KRONK, reserves the right, pursuant to §768.72, Florida Statutes, to amend his Complaint and seek punitive damages upon the requisite predicate showing.

## COUNT II - DEFAMATION (INNUENDO)

COMES NOW, Plaintiff, ROY KRONK (hereinafter referred to as "Kronk" or "Plaintiff"), by and through his undersigned counsel, and hereby sues Defendant, CINDY ADAMS and states as follows:

42.    Plaintiff hereby realleges and incorporates Paragraphs 1 through 27 and 30 through 41 above, as if fully set forth herein.

43.    This is an action for damages for defamation (Innuendo).  Plaintiff's damages are One Million Dollars.

44.    The above referenced statements made and published by Defendant on or about March 1, 2010, were false and defamatory statements concerning the Plaintiff.

45.    Defendant attributes the statements to a "source". Defendant could have and should have investigated the statements to determine the accuracy, credibility and good faith of the source. Instead, the Defendant made and published these false and defamatory statements against the Plaintiff without reasonable care as to the truth or falsity of the statements, in that a proper investigation would have demonstrated to Defendant that the statements were false and misleading. Defendant's statements gave false suggestions, impressions and implications and conveyed a materially different meaning than the truth would have conveyed. The Defendant's statements in the March 1, 2010 article leave the impression with the reader that Plaintiff, Roy Kronk perjured himself, lied about how he found the remains of Caylee Anthony and that Plaintiff was involved in a conspiracy with regard to Caylee Anthony's remains.

8

46.    Although Defendant knew or should have known that the statements were defamatory (Innuendo), Defendant proceeded to publish the false and defamatory statements with malice and without regard to Plaintiff.

47.    These statements in the article are false and defamatory statements because the extrinsic evidence shows that it was widely known by the public through multiple national media outlets and readily available to the public on or before the publication of the March 10, 2010 article:

(a)    that all police departments, local and federal, had declared that Kronk was not a suspect in the disappearance or murder of Caylee Anthony;

(b)    that all police departments, local and federal, had declared that Kronk had no connection with the Anthony family;

(c)    that Kronk had previously made both sworn and unsworn statements as to his involvement in locating the body of what turned out to be Caylee Anthony, none of which involved the use of duct tape;

(d)    that Kronk was regarded as a "good Samaritan";

(e)    that Kronk had never been charged with a crime; and

(f)    that Kronk had no prior convictions.

48.    At the time of publication of this article, Cindy Adams knew or should have known that the statements contained in the article were false and defamatory because of the publically known facts surrounding Kronk's discovery of the body and more generally from the publically known facts surrounding the entire investigation into Caylee Anthony's disappearance and the case *State v. Anthony.*

49.    The article does not reasonably reflect the publically known facts regarding Kronk's involvement in the situation of Caylee Anthony's murder and disappearance.

9

50. The actions taken by Defendant constituted unprivileged publications to third parties of the above described false and defamatory statements about Plaintiff.

51. The actions of Defendant amounted to, at minimum, negligence or gross negligence and were done with malice in an attempt to injure Plaintiff's reputation. The above statements were made with the intent to expose Plaintiff to hatred, ridicule or contempt or charged Plaintiff with committing a crime and tended to injure Plaintiff in his business, reputation or occupation.

52. The actions of Defendant were the direct and proximate result of the damages suffered by Plaintiff as Plaintiff has suffered loss of reputation, embarrassment humiliation, outrage and has otherwise been directly damaged by Defendant's unprivileged actions.

53. In excess of the specific damages suffered by Plaintiff, Plaintiff is entitled to special damages due to the special harm caused by the unprivileged publications, namely, that the false statements deprived Kronk of his right to be secure and undisturbed in his personal life and affairs, subjected Kronk to the scorn and ridicule of fellow employees and friends, and the general public, caused loss of wages and income, caused diminished earning capacity, caused loss of employment and employment opportunities, and caused Kronk to suffer mental and emotional distress.

54. Defendant made and published these false and defamatory statements without reasonable care to determine the falsity of the statements.

WHEREFORE, Plaintiff, ROY KRONK, demands that this Court render judgment against Defendant, CINDY ADAMS, and award all damages, including interest, costs and any and such other and further relief as this Court deems just and proper under the circumstances. Plaintiff, ROY

10

KRONK, reserves the right, pursuant to §768.72, Florida Statutes, to amend his Complaint and seek punitive damages upon the requisite predicate showing.

Dated: October 07, 2013.

/s/ Howard S. Marks
HOWARD S. MARKS
Florida Bar No.: 0750085
Email:  hmarks@burr.com
Secondary Email:  dmmorton@burr.com
Secondary Email:  mrannell@burr.com
ABBYE E. ALEXANDER
Florida Bar No.: 0662348
Email:  Aalexand@burr.com
Secondary Email:  jmorgan@burr.com
BURR & FORMAN LLP
200 S. Orange Avenue, Suite 800
Orlando, Florida 32801
Telephone: (407) 540-6600
Facsimile: (407) 540-6601
Attorneys for Plaintiff

11

267931 v2